# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HOME DESIGN SERVICES, INC.,**

                **Plaintiff,**

**-vs-**
                              **Case No. 6:02-cv-637-Orl-28JGG**

                              **Consolidated with**

                              **Case No. 6:03-cv-595-Orl-28-JGG**

**PARK SQUARE ENTERPRISES, INC.,**
**SURESH K. GUPTA, BRAHAM RATTAN**
**AGGARAWAL, ANIL DESHPANDE,**

                **Defendants.**

_____

## ORDER

This cause is before the Court on the motion for summary judgment filed by Defendants Park Square Enterprises, Inc. ("Park Square"), Suresh K. Gupta ("Gupta"), Braham Rattan Aggarawal, and Anil Deshpande (collectively "Defendants") (Doc. 156) and the cross-motion for partial summary judgment (Doc. 160) filed by Plaintiff Home Design Services, Inc. ("Home Design"). Home Design alleges that Defendants violated the federal Copyright Act, 17 U.S.C. § 501 et seq., by advertising, designing, constructing, and participating in the construction of multiple residences which were largely copied from Home Design's copyrighted architectural designs. Defendant Park Square has filed a two-count counterclaim against Home Design alleging unfair competition and slander of title under the common law of Florida.

Defendants seek summary judgment on all of Home Design's claims.  Home Design seeks partial summary judgment on both counts alleged in Park Square's counterclaim, all of Defendants' affirmative defenses, and certain elements of its own claims.  For the reasons stated below, both sides' motions must be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Home Design is an architectural design firm that designs and sells architectural plans for residential homes.  Park Square is a construction firm which develops and constructs residential homes.  Defendant Gupta is vice-president and 3% owner of Park Square and a member of the company's board of directors.

Home Design alleges that it is the owner of two copyrighted architectural plans, the HDS-2089 and HDS-2680.[1]  Home Design developed the HDS-2089 plan in 1991 for the residential construction firm, Reiche & Silliman.  In an agreement which was eventually set forth in a letter from the owner of Home Design, James Zirkel ("Zirkel"), to the owner of Reiche & Silliman, Home Design assured Reiche & Silliman that it would not sell the HDS-2089 plan to any other construction firm in the Orlando area.  (Doc. 174, Ex. D).  Home Design developed the HDS-2680 plan for Beazer Homes in 1997.  Pursuant to its agreement

---

[1] Home Design also claims that another of its designs, the HDS-1934, was infringed by Park Square's "Juniper Springs" plan.  During these proceedings, belated evidentiary disclosures raised substantial questions regarding the continued  viability of this claim.  Accordingly, on April 13, 2005, the Court ordered that the claim be severed from Home Design's two other claims.  Additionally, the Court denied both sides' motions for summary judgment to the extent that the motions addressed Home Design's HDS-1934 claim.  (Doc. 209).

with Home Design, Beazer Homes had the exclusive right to build homes using the HDS-2680 plan. (Doc. 172, Ex. H).

Home Design claims that Park Square's "Orchid Island" plan infringes the HDS-2680 design and that its "Belaggio" (or "Seabreeze Island") design infringes the HDS-2089 design. Home Design maintains that it was not aware of these alleged infringements until August 2001. The instant action was brought by Home Design in May 2002.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e) (providing that the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue, first, that Home Design lacks standing to bring a claim of infringement based on the HDS-2089 plan.  Next, Defendants contend that both of Home Design's infringement claims are insufficiently supported by evidence in the record that any original elements in the HDS-2089 or HDS-2680 plans were copied.

On the issue of damages, Defendants maintain that Home Design has failed to produce any facts which tend to show a causal link between Defendants' alleged infringements and the profits which they purportedly derived from such infringements. Defendants also submit that Home Design has no basis under 17 U.S.C. § 412 for claiming attorney's fees or statutory damages for the alleged infringement of HDS-2089.

Finally, Defendants argue that Gupta cannot be held vicariously or personally liable for any of the alleged copyright violations as he had no supervisory responsibilities at Park Square.

**A. Ownership of HDS-2089**

The Copyright Act provides that only the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right while he or she is the owner of it." 17 U.S.C. § 501(b). Defendants argue that Home Design transferred all ownership rights in the HDS-2089 design to Reiche & Silliman, thereby relinquishing the right to sue for infringement of the design. The transfer of rights, Defendants contend, is reflected in the following language contained in Zirkel's letter to the owner of Reiche & Silliman:

> We will not sell the aforementioned plans to any builder within a fifty mile radius of the intersection of SR-50 and I-4, an area of approximately 7850 square miles. This policy will cover all past, present and future designs from this date forward.

Doc. 156, Ex. A to Ex. 2.

The critical flaw in Defendants' argument, as Home Design points out, is the absence of any reference in Zirkel's letter to the HDS-2089 copyright. While it is true that "[a] transfer of copyright ownership" may "be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer," Imperial Residential Design, Inc. v. Palms Development Group, Inc., 70 F.3d 96, 99 (11th Cir. 1995) (interpreting requirement set forth under 17 U.S.C. § 204(a)[2]) (citation omitted), the memorandum should, at a minimum, make mention of the copyright which is being transferred. See Radio TV Espanola S.A. v. New World Entm't, Ltd., 183 F.3d 922, 928 (9th Cir. 1999) ("[W]ithout language indicating finality,

---

[2] Section 204(a) provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

§ 204(a) is not satisfied"); Foraste v. Brown Univ., 290 F. Supp. 2d 234, 240 (D.R.I. 2003) (specifically requiring that the subject matter of the agreement be identified) (citing Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 864 F. Supp. 246, 250 (D. Mass. 1994), aff'd, 119 F.3d 55 (1st Cir. 1997)).  Because Zirkel's letter makes no such reference and otherwise fails to evince an intent by Home Design to transfer the copyright in the HDS-2089 design, Defendants' argument that Home Design lacks standing to bring its HDS-2089 infringement claim fails.[3]

### B. Copying

In order to prevail on a copyright infringement claim, a plaintiff must show that the defendant copied "constituent elements of the [copyrighted] work that are original." Feist Publ'ns v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) .  Where, as in this case, there is no direct evidence of copying, it must be shown that the infringing work and copyrighted work are "so substantially similar that . . . an average lay observer would recognize the alleged copy as having been appropriated from the original work."  Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 (11th Cir. 2002).

Defendants submit that any similarities which their plans bear to those of Home Design are due to a general commonality of certain architectural features and not to the copying of any original elements in Home Design's plans.  Defendants' argument may ultimately prove persuasive.  To consider it at this point, however, would require a weighing

---

[3] Curiously, it is Defendants who argue that the parol evidence rule prohibits the use of extrinsic evidence "to import additional language into the terms of the agreement" between Home Design and Reiche & Silliman.  (Doc. 156 at 6).

of facts which cannot be done in reviewing a motion for summary judgment.  Thus, for now

at least, Defendants' argument fails.

### C. Profits Attributable to Infringement

Should Home Design ultimately prevail on its claims, Section 504(b) provides that it

shall be entitled to both actual damages as well as "any profits of the infringer that are

attributable to the infringement and are not taken into account in computing the actual

damages."  In establishing the extent of such profits, Section 504(b) further provides that

"the copyright owner is required to present proof only of the infringer's gross revenue."  It is

the infringer's burden "to prove his or her deductible expenses and the elements of profit

attributable to factors other than the copyrighted work."

Notwithstanding the plain language of Section 504(b), Defendants maintain that, to

survive summary judgment, Home Design must proffer "non-speculative evidence" which

supports a causal link between Defendants' profits and the their alleged infringing activities.

As there is no basis here to depart from the plain language of a statute, Defendants'

argument fails.  In the event that Home Design's claims succeed, the onus will lie with

Defendants "to show both the net profit (revenues less expenses) and the profit elements

attributable to factors other than use of the copyrighted work."[4]   Home Design Servs., Inc.

---

[4] Any effort by Defendants to limit their damages will likely "depend on [proof of] whether [Home Design's] plans are unique or, conversely, whether they are merely an adaptation of similar plans readily available in the marketplace."  Home Design Servs., Inc. v. Schwab Dev. Corp., No. 6:03-cv-596, slip op. at 7 (M.D. Fla. January 7, 2005).  In other words, the "relative value" assigned to Home Design's plans will depend on the basic principles of "supply and demand."  Id.

v. Schwab Dev. Corp., No. 6:03-cv-596, slip op. at 7 (M.D. Fla. January 7, 2005) (citing On Davis v. The Gap, Inc., 246 F.3d 152, 159 (9th Cir. 2001).

Defendants' alternative contention is that Home Design's entitlement to damages should be limited as a matter of law to 10-15% of what it would have cost to purchase the two allegedly infringed house plans.[5]  In making this contention, Defendants rely on a statement by Zirkel that the price of a home is generally determined by adding 10-15% to building costs.  This argument also fails.

Zirkel's remarks merely concerned the standard method for calculating home prices. As such, the remarks have no direct bearing on the degree to which architectural designs generally factor into a builder's profits and even less bearing on the more precise issue of what value to assign to Defendants' alleged use of the HDS-2089 and HDS-2680 designs. Once again, if a finding of infringement is made, Defendants will have an opportunity to demonstrate what portion of Park Square's revenue was actually attributable to the copying of Home Design's plans.  Limiting damages to the extent the Defendants endeavor to here, however, will likely require evidence far more probative than Zirkel's testimony.

### D.  Statutory Damages & Attorney's Fees

Home Design concedes that it has no grounds for claiming statutory damages or attorney's fees on the basis of its HDS-2089 claim.  Summary judgment is thus awarded to Defendants to the extent of Home Design's concession.

---

[5] According to Defendants, the price of Home Design's house plans ranges from $400 to $600.  Thus, under Defendants' theory, Home Design's damages would be limited to $40 to $90 per plan.

### E.  Gupta's Personal Liability

"An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers, P.A., 756 F.2d 801, 811 (11th Cir. 1985) (citation omitted).  Under this standard of vicarious liability, a person may be held personally liable for the damages resulting from copyright infringement even if that individual was "ignorant of the infringement." Id.

As a 3% owner of Park Square, it is clear that Gupta "had a financial interest" in the alleged infringing activities.  Thus, the issue of Gupta's personal liability hinges on whether he had "the ability to supervise [the] infringing activity."  Nothing in the record supports Home Design's contention that he did.  Cf. Playboy Enters. v. Starware Publ'g Corp., 900 F. Supp. 438, 441 (S.D. Fla. 1995) (finding that defendant "admitted that he had the ability to supervise [the] infringing activity").  Indeed, the only evidence in the record bearing on this issue–Gupta's own testimony–indicates that Gupta had no duties at Park Square, was not involved in any of the company's day-to-day operations, and, most critically, had no oversight responsibilities in relation to architectural design.  (Doc. 156, Ex. 8 at 6-9).

Given the absence of facts in the record which could form the basis for a reasonable inference that Gupta had the ability to supervise Defendants' alleged infringing activities, summary judgment is granted to Defendants on the issue of Gupta's personal liability.[6]

---

[6] Home Design argues that "proof of ownership is sufficient to establish both the right and ability to supervise and a direct financial interest."  (Doc. 174 at 22).  This argument would, in essence, make owners of companies–even minority owners like Gupta–*per se*

## IV. HOME DESIGN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Home Design contends, first, that there are no issues of material fact remaining as to whether it has established prima facie ownership of the HDS-2089 and HDS-2680 copyrights. Additionally, Home Design argues that Defendants should be bound to their own experts' determination of the amount of gross revenue Park Square derived from the alleged infringements. Finally, Home Design seeks summary judgment on all ten of Defendants' affirmative defenses and on both counts alleged in Defendants' counterclaim.

### A. Copyright Ownership

Home Design contends that it has produced uncontroverted evidence, including certificates of registration and testimony from Zirkel, which establishes that it is the prima facie owner of the HDS-2089 and HDS-2680 copyrights. In response, Defendants argue, first, that Home Design's prima facie case of copyright ownership in the HDS-2089 design fails because the copyright for the design was not properly registered. Second, Defendants contend that issues of material fact remain both as to whether the HDS-2680 design was co-authored and, even if it was not, whether Home Design transferred exclusive rights in the design to Beazer Homes.

---

vicariously liable for the infringing activities of their companies, regardless of whether they had any actual responsibility for, or even knowledge of, the infringing conduct. Home Design relies on the Fourth Circuit's decision in <u>Nelson-Salabes, Inc. v. Morningside Dev., LLC</u>, 284 F.3d 505 (4th Cir. 2002). In that case, however, the court simply found that the lower court was not clearly in error when it determined that the infringing company's owner–*another company*–had the ability to control the construction of a real estate project. <u>Id.</u> at 510 n.4, 514. In making this finding, the Fourth Circuit did not categorically hold that owners of companies are *per se* liable for the infringing activities of their companies.

### 1. HDS-2089

The Copyright Act provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).  As Defendants contend, the registration for the HDS-2089 copyright reflects that it was first published on August 11, 1991 but was not registered until August 8, 2000.  As such, the registration appears to fall short of the requirement under § 410(c) that the certification of registration be made within five years after the first publication of the work.  Home Design has offered no evidence to the contrary.  Under these facts, it cannot be determined that Home Design has succeeded in establishing a prima facie case that it is the owner of the HDS-2089 copyright.  Accordingly, Home Design's motion for summary judgment on the issue of copyright ownership in the HDS-2089 design must be denied.

### 2. HDS-2680[7]

A co-authored work "is a work prepared by two or more authors with the intention that their contribution be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.  Defendants contend that, because the HDS-2680 plan is the product of multiple meetings with Beazer Homes, issues of material fact remain to be resolved as to whether the plan was co-authored.  The evidence which Defendants cite in support of their

---

[7] Defendants do not dispute that the registration of the HDS-2680 copyright satisfies the requirements under § 410(c) and, in fact, concede that the registration "provide[s] a minimum level of evidence" that Home Design has established prima facie ownership of the copyright.  (Doc. 172 at 2).

argument does not, however, tend to show this.  At best, their evidence merely suggests that Beazer Homes provided criteria which informed Home Design's development of the design. See Doc. 156, Ex. 1 at 39-42, 53, 59.  This type of "involvement does not . . . ordinarily render the client an 'author' of [an] architectural plan[]."  M.G.B. Homes v. Ameron Homes, 903 F.2d 1486, 1493 (11th Cir. 1986) (citation and internal quotations omitted).  Rather, there must be some evidence that Beazer Homes made a contribution which became an "inseparable or interdependent part of the final house drawings."  Id.  The record contains no such evidence.

In support of their contention that Home Design granted Beazer Homes exclusive ownership rights in the HDS-2680 design, Defendants point to an agreement whereby Home Design granted Beazer Homes the exclusive right to use the HDS-2680 design an "unlimited number of times to construct homes through-out [sic] the United States." (Doc. 172, Ex. H). This agreement, however, evinces only Home Design's intent to grant Beazer Homes exclusive use of the design, not an intent to relinquish all of its ownership interests in it.  Any doubt on this point is erased by reservations in the agreement which precluded Beazer Homes from: (1) removing Home Design copyright notations from the design; (2) selling, assigning, or granting the design to any other person or entity; (3) allowing any architect, designer, or draftsman to use the design for derivative works; or (4) transferring its license to use the design to any other entity or individual.  These reservations make clear that Home Design intended to retain certain interests in the HDS-2680 design including, most notably,

an interest in preventing anyone but Beazer Homes from using it–the very interest which Home Design now claims to have been violated by Defendants.[8]

As the foregoing analysis illustrates, Defendants have failed to raise issues of material fact with regard to whether Home Design has established prima facie ownership of the HDS-2680 copyright.  Accordingly, summary judgment must be awarded to Home Design on this element of its HDS-2680 claim.

### B. Gross Revenue

As explained earlier in the order, Home Design only bears the burden of proof in showing its actual damages and the amount of Defendants' gross revenue.  With respect to the issue of gross revenue, Home Design simply argues that Defendants should be held to the calculations of their own experts.  In response, Defendants do not, of course, dispute those calculations.  Rather, Defendants argue, once again, that Home Design must establish a causal nexus between the infringements and revenue.  For reasons already stated in this Order, that argument fails.

There are, therefore, no issues of fact remaining as to the amount of gross revenue Defendants derived from the sale of homes which allegedly infringed upon the HDS-2089 and HDS-2680 designs.  It should be noted that this determination does not mean that the issue of damages has been definitively resolved but merely that the burden now shifts to

---

[8]  The analysis might have proceeded differently had Home Design sought to establish beneficial ownership of the copyrights solely on the basis of a reversionary interest. See, e.g., Hearn v. Meyer, 664 F. Supp. 832, 840-44 (S.D.N.Y. 1987); see also 3 Nimmer on Copyright § 12.02[D] ("[A] mere contingent reversionary interest in a copyright is inadequate to confer standing . . . .").

Defendants to "prove [their] deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

### C. Defendants' Affirmative Defenses

### 1. Defendants' Seventh, Eighth, and Ninth Affirmative Defenses

Defendants assert, in the form of affirmative defenses, that Home Design's claims are based upon elements which do not constitute copyrightable material, that the copyright registrations for the HDS-2680 and 2089 designs are fraudulent or invalid, and that any protectable expression in the designs is not substantially similar to Defendants' plans. Home Design argues that these defenses are improperly designated as affirmative defenses and, therefore, should be stricken.

Home Design is correct in its contention. "The elements of a copyright infringement claim are (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Feist, 499 U.S. at 361. Defendants' seventh, eighth, and ninth so-called affirmative defenses are essentially denials of these two elements. As such, the defenses must be stricken to the extent that they have been asserted as affirmative defenses.

### 2. Defendants' First, Second, Third, Fourth, Fifth, Sixth, and Tenth Affirmative Defenses

In their remaining defenses, Defendants contend that: (1) Home Design's claim is barred by the applicable statute of limitations; (2) each count of Home Design's complaint fails to state a claim; (3) Home Design has not been injured as a result of any act committed by Defendants; (4) Home Design's claims are barred by the doctrines of laches and

equitable estoppel; (5) Home Design's claims are barred by the doctrine of unclean hands and inequitable conduct; (6) any elements in Defendants' works which bear similarity to those of Home Design are in the public domain and thus any copying of those elements constituted fair use; and (7) Home Design's claims are barred by the doctrine of copyright misuse.   Home Design does not dispute that these defenses are properly asserted as "affirmative defenses" but has instead moved for summary judgment on the basis that each defense lacks sufficient factual support in the record or is otherwise deficient as a matter of law.

### 1. Defendants' First Affirmative Defense: Statute of Limitations

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).   A copyright claim accrues "when the plaintiff learns, or should as a reasonable person have learned that the defendant was violating his rights." James W. Ross, Inc. v. Cecil Allen Constr., Inc., No. 6:03-cv-792, 2004 WL 1146104, at *2 (M.D. Fla. Apr. 26, 2004) (quoting Gaiman v. McFarlane, 360 F.3d 644, 653 (7th Cir.), reh'ng and reh'ng en banc denied (7th Cir. 2004)); see also Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., specially concurring).

Defendants assert that Home Design "was aware of [Park Square] using the designs at issue since at least 1997 (and possibly 1990), and did not enforce its claimed copyright until the filing of this lawsuit in 2002."   (Doc. 160, Ex. L).   In making this contention, Defendants point out that, during the period of the alleged infringing activity, Park Square had promoted its products in the *Parade of Homes* , conducted business with Home Design,

and maintained one of the larger building operations in Central Florida.  In its motion for summary judgment, Home Design argues that Defendants' statute-of-limitations defense relies on the proposition–considered and rejected by the Court in <u>James W. Ross</u>–that an owner of a copyrighted house plan must take extraordinary measures "to ensure that no infringing houses are being built."  2004 WL 1146104, at *3 (rejecting the notion that "every owner of a copyrighted house plan would need to employ a full-time investigator to scour public records and drive around every housing development to ensure that no infringing houses are being built").

While it is true that Home Design was not required to take extraordinary measures to determine whether Defendants were infringing upon its designs, this determination alone does not resolve the question of whether Home Design *should have known* that its plans were being used.  Defendants do not contend that Home Design was required to "employ a full-time investigator" or routinely "drive around . . . housing development[s]" to police its copyrighted house plans but argue instead that–given the scope and transparency of Park Square's building operations–Home Design reasonably should have known of the alleged infringements.  This argument raises questions of fact that cannot be determined at the summary judgment stage.  <u>See</u> <u>id.</u> (denying summary judgment).

### 2. Defendants' Second Affirmative Defense: Failure to State a Claim

In moving for summary judgment on this defense, Home Design focuses its argument exclusively on the adequacy of its copyright claim.  In response, Defendants do not dispute the sufficiency of Home Design's copyright claim but instead suggest that the sole function

of their defense is to guard against the possibility that Home Design will later assert that its complaint contains claims of unfair competition and unfair trade practices.

As Defendants seem to have conceded, Home Design has adequately stated a claim for copyright infringement by alleging: (1) that it owns copyrights in the HDS-2089 and 2680 designs; (2) that the designs have been registered in compliance with the Copyright Act ; (3) that the designs are original works; and (4) that Defendants improperly built homes using the designs.  See Klinger v. Weekly World News, Inc., 747 F. Supp. 1477, 1481 (S.D. Fla. 1990).  Home Design's motion for summary judgment on Defendants' affirmative defense of failure to state a claim is, therefore, granted to the extent that it implicates the sufficiency of Home Design's copyright claims.  As the issue has not been properly raised, the Court expresses no opinion on whether Home Design has stated claims of unfair competition and unfair trade practices or whether Defendants have adequately raised an affirmative defense of failure to state a claim as to those potential claims.

### 3.  Defendants' Third Affirmative Defense: Lack of Compensable Injury

Home Design moves for summary judgment on the basis of Defendants' own expert report which states that Home Design "receives between $220-to-$450" in fees for the use of its designs. (Doc. 160, Ex. 4 to Ex. K).  This concession, according to Home Design, necessitates that Defendants' lack-of-compensable injury defense be stricken.  Defendants counter that the only parties which can claim injury are Reiche & Silliman and Beazer Homes since both firms had the exclusive right to build homes using Home Design's plans during the time that the alleged infringements occurred.

-17-

In light of Home Design's agreements with Reiche & Silliman and Beazer Homes, it cannot be determined, at least on the basis of Home Design's argument, that no issues of material fact remain on the issue of whether Home Design can claim a compensable injury. If Home Design did, in fact, agree to refrain from selling its plans to any other firms during the time of the alleged infringing activity, it is unclear how it could have been injured in the form of lost sales.

### 4. Defendants' Fourth Affirmative Defense: Doctrines of Laches and Equitable Estoppel

Laches is "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting [a] claim, when that delay has prejudiced the party against whom relief is sought." Black's Law Dictionary 891 (8th ed. 2004). The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Kansas v. Colorado, 514 U.S. 673, 687 (1995).

Defendants submit that Home Design unreasonably delayed in filing its claims because the activities of which it now complains had been aggressively promoted by Defendants since as early as the mid-1990s. As a result, Defendants maintain that they are prejudiced by virtue of having to rely on witnesses who must now remember events which occurred nearly a decade ago. Furthermore, Defendants contend that, had Home Design filed its suit earlier, the issues presented in this case could have been resolved by way of a declaratory judgment rather than through the highly contentious and expensive litigation which has instead ensued.

-18-

Home Design maintains, however, that it did not acquire knowledge of Defendants' infringing activities until August 2001–less than a year before it filed this suit. Defendants have failed to proffer any evidence to rebut this contention. The undisputed facts, therefore, demonstrate that the extent of Home Design's delay in filing suit was less than one year. Such a delay is certainly not unreasonable. Summary judgment must, therefore, be awarded to Home Design on Defendants' laches defense.

Defendants' equitable estoppel defense does not fare any better. The doctrine of equitable estoppel applies in copyright cases to prevent claimants from recovering when they have acted "in a way that induc[ed] the infringer reasonably to rely upon such action to his detriment." Dream Dealers Music v. Parker, 924 F. Supp. 1146, 1152 (S.D. Ala. 1996) (quoting Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1228 (7th Cir. 1991)). As Home Design points out, there is simply no basis in the record for any claim that Defendants were induced into their alleged infringing activities as a consequence of any action taken by Home Design.

### 5. Defendants' Fifth Affirmative Defense: The Doctrine of Unclean Hands

"The defense of unclean hands will bar enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.'" Saxon v. Blann, 968 F.2d 676, 680 (8th Cir. 1991) (quoting 3 Nimmer on Copyright, § 13.09[B] (1991)). To successfully assert the unclean hands defense, a defendant must show: (1) "that the plaintiff's wrongdoing is directly related to the claim against which it is asserted;" and (2) "that it was personally injured by [the plaintiff's] conduct." Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 450-51 (11th Cir. 1993).

Defendants argue that Home Design has dirtied its hands by failing to identify third-party authors of the HDS-2089 and HDS-2680 designs and by seeking to assert rights in common, unprotectable elements contained in the designs.   In its motion for summary judgment, Home Design contends that Defendants' unclean hands defense constitutes an illegitimate attack on its First Amendment right to petition the courts.

Home Design's reliance on the right to petition is misplaced.   First, there is no indication in this case that Defendants' assertion of the unclean hands defense aims to take away Home Design's right to avail itself of the courts.   Nor, for that matter, is it clear how the assertion of the unclean hands defense or any other defense could ever implicate a plaintiff's right to petition.   After all, the occasion to defend oneself against suit arises precisely because the complaining party has already been granted access to the courts.   An affirmative defense, moreover, cannot be used, as a counterclaim might, to deter claimants from filing suit through the threat of damages.   See Hirschfield v. Spanakos, 104 F.3d 16, 19 (2d Cir. 1997) (noting that the right to petition "protects plaintiffs from *damage claims*") (emphasis added); Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, 858 F.2d 1075, 1084 (5th Cir. 1988) (extending the right to petition to dismiss a common law tort claim on the basis that the claim threatened to "abridge or chill the constitutional right of petition").   It is thus not surprising that Home Design fails to cite a single case for the curious proposition that an affirmative defense implicates the First Amendment right to petition.

Having dispensed with Home Design's reliance on the right to petition, it is further determined that material issues of fact remain on the issue of whether Home Design committed wrongs which would preclude it from recovering on its claims. Accordingly, Home

Design's motion for summary judgment on Defendants' unclean hands defense must be denied.

### 6. Defendants' Sixth Affirmative Defense: Fair Use/Public Domain

The Copyright Act provides that "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107 (2005). The factors to consider in determining whether the use of a copyrighted work is a "fair use" include but are not limited to:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id. The codification of the fair use doctrine reflects, among other things, Congress' concern "that access to the source of all ideas, the public domain, remain unrestricted." Cable News Network, Inc. v. Video Monitoring Servs., Inc., 940 F.2d 1471, 1484 (11th Cir. 1991). The fair use provisions supplement "the admonition under 17 U.S.C. § 102(b) that: 'In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.'" Id.

In moving for summary judgment on Defendants' fair use defense, Home Design focuses on the four factors listed in § 107. In response, Defendants do not discuss, nor even so much as mention, the fair use factors. Instead, while presumably conceding that they cannot make out a fair use defense under the factors set forth in § 107, the sum total

of Defendants' treatment of their fair use defense is contained in a single sentence: "While [Defendants do] not believe [the] elements are copyrightable, if they are, they were in the public domain long before [Home Design] ever sought copyright protection and, therefore, any use is fair use." (Doc. 172 at 14).

Rather than supporting a fair use defense, Defendants' argument seems to merely deny, once again, that they copied original elements in the HDS-2089 and HDS-2680 designs. The issue of whether Defendants' fair use defense is simply a denial, rather than truly an affirmative defense, however, has not been properly briefed by either side in this dispute. Thus, while it appears that Defendants have not adequately raised a fair use defense, an award of summary judgment in this instance would not be appropriate.[9]

### 7. Defendants' Tenth Affirmative Defense: Copyright Misuse

The doctrine of copyright misuse prohibits a copyright holder from using a copyright "'to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant.'" Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 792 (5th Cir. 1999) (quoting Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 979 (4th Cir. 1990) (quoting Morton Salt Co. v. G.S. Suppiger, 314 U.S. 488, 492 (1942))). The defense functions as an absolute bar on recovery for copyright plaintiffs who have attempted to extend their limited rights to "property not covered by the . . . copyright." Lasercomb, 911

---

[9] If Defendants' so-called fair use defense does, indeed, prove to be no more than a regurgitated denial of the originality of Home Design's plans, there will be no prejudice from the present denial of summary judgment. Should Defendants' originality argument succeed, Home Design's claim will fail and there will be no cause to consider Defendants' affirmative defenses. On the other hand, if Defendants' denial of originality argument fails, the argument would not, of course, fare any better if it were restated as an affirmative defense.

F.2d at 972.  Defendants claim that Home Design has misused its copyrights by threatening

"millions of dollars in damages through disgorgement of profits . . . to force settlement[s]" on

the basis of claims which allege infringement of "common layouts, room placements and

other . . . [non-original] elements."  (Doc. 172 at 16).  Home Design argues, first, that

Defendants' misuse defense fails as a matter of law because the doctrine of copyright

misuse has not been recognized in the Eleventh Circuit.  Alternatively, Home Design

contends that Defendants have failed to support their defense with any evidence in the

record.

Home Design's argument that the copyright misuse defense fails as a matter of law

is clearly at odds with the weight of authority favoring recognition of the defense as well as

the basic objectives of copyright law.  Since 1990, all five circuit courts which have

addressed the issue have recognized the viability of the copyright misuse defense.  <u>See,</u>

<u>e.g.</u>, <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 342 F.3d 191 (3d Cir. 2003);

<u>Alcatel USA, Inc. v. DGI Techs., Inc.</u>, 166 F.3d 772 (5th Cir. 1999); <u>Practice Mgmt. Info.</u>

<u>Corp. v. AMA</u>, 121 F.3d 516 (9th Cir.), <u>cert. denied</u>, 522 U.S. 933 (1997), <u>amended</u>, 133

F.3d 1140 (9th Cir. 1998); <u>Reed-Union Corp. v. Turtle Wax</u>, 77 F.3d 909, 913 (7th Cir.

1996); <u>Lasercomb</u>, 911 F.2d 970; <u>see also</u> 4 Nimmer on Copyright § 13.09[A][2][a][2][b]

(noting the recent trend to recognize the copyright misuse defense following the Supreme

Court's "tacit approval of an analogy between patents and copyrights" in <u>United States v.</u>

<u>Loew's, Inc.</u>, 371 U.S. 38 (1962)); Mark Lemley, *Beyond Preemption: The Law and Policy*

*of Intellectual Property Licensing*, 87 Calif. L. Rev. 111, 152 n.184 ("[T]he cases expressing

skepticism about the copyright misuse defense 'should be taken with a grain of salt' because

they are generally older cases, and the recent trend seems to be to recognize the defense.") (quoting 2 Paul Goldstein, Copyright § 9:35-40 (1998)).  Even the Eleventh Circuit, while it has not yet recognized the defense, has intimated that it may one day do so in order "to discipline those who abuse their copyrights."  Bellsouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 933 F.2d 952 (11th Cir. 1991) (declining to apply to the copyright misuse defense but indicating that the defense might be available in future cases), vacated on other grounds, 977 F.2d 1435 (11th Cir. 1992).

The trend toward recognizing the copyright misuse defense, moreover, is well-grounded in the basic objectives of copyright.  At its core, copyright law seeks "to promote the dissemination of creative expression, and provide incentives for copyright owners to produce . . . original works."  CBS Broad., Inc. v. EchoStar Communications Corp., 265 F.3d 1193, 1211 (11th Cir. 2001).  While these goals are furthered by granting copyright holders limited monopolies over the original elements of their creative works, the very same goals may be severely undermined when copyright holders leverage their monopolies to control "areas outside of the monopol[ies]."  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001).  More to the point, where a copyright holder asserts rights in non-copyrightable materials, other individuals may be discouraged from integrating those non-copyrightable materials into their own original creative works.  See generally William F. Patry & Richard A. Posner, Fair Use and Statutory Reform in the Wake of Eldred, 92 Calif. L. Rev. 1639, 1654-59 (2004).  The reward for the copyright holder is unduly inflated while the creativity of other individuals is potentially stifled.  In short, the basic goals of copyright are undermined.

Against this background, it is clear that the function of the copyright misuse defense amounts to more than merely penalizing "overclaiming" by copyright holders. Id. at 1658. Rather, the defense also encourages (or at least diminishes a deterrent for) other members of the public to engage in creative expression. For this reason, and in accordance with nearly all of the courts which have had occasion to address the issue, the Court recognizes copyright misuse as a viable defense to copyright infringement.

The only question that remains is whether Defendants' allegations fall within the ambit of copyright misuse. Home Design attempts to characterize Defendants' misuse defense as an improper attack on its right to file a "good faith" lawsuit. However, Home Design's "good faith," or lack thereof, is an issue which remains to be resolved. In the event that the HDS-2089 and HDS-2680 designs are found to be largely generic in nature, the only logical next step would be to determine whether Home Design has used its limited rights to "obtain property protection . . . that copyright law clearly does not confer" in an effort "to force a settlement or . . . even achieve an outright victory over" Defendants. Assessment Techs. of Wi, LLC v. Wire Data, Inc., 350 F.3d 640, 647 (7th Cir. 2003); see also Assessment Techs. of Wi, LLC v. Wire Data, Inc., 361 F.3d 434, 437 (7th Cir. 2004) (subsequent proceeding).[10] Given the gravity of this issue, there can be no doubt that Home Design's motion for summary judgment on Defendants' copyright misuse defense must be denied.

---

[10] Facing facts very similar to those alleged by Defendants in this case, the Seventh Circuit in Assessment Technologies did not "reach the question [of] whether the plaintiff's conduct rose to the level of actual copyright misuse" but "made clear that it came close" and sanctioned the plaintiff for what the court deemed to be, at the very least, a clear abuse of process. 361 F.3d at 437.

### D. Park Square's Counterclaims

### 1. Slander of Title

Slander of title, as distinguished from defamation of personal reputation, "involves the defamation of property." Sailboat Key, Inc. v. Gardner, 378 So. 2d 47, 47 (Fla. 3d DCA 1979). To establish a claim of slander of title in Florida, the claimant must show that the allegedly offending party "communicated to a third party a false statement disparaging title which has caused the plaintiff actual damage." Residential Communities of Am. v. Escondido Cmty. Ass'n, 645 So. 2d 149, 150 (Fla. 5th DCA 1994).

The crux of Park Square's slander of title claim is that Home Design made false representations which cast unwarranted doubts on Park Square's ownership of the "Orchid Island," "Belaggio," "Seabreeze Island," and "Juniper Springs" architectural designs.[11] According to Park Square, Home Design raised such doubts by registering copyrights for largely generic designs which it then used as a basis for telling representatives of Beazer Homes that Park Square's designs were infringing works.

Relying on its First Amendment right to petition, Home Design submits that the only basis for Park Square's slander of title counterclaim is the filing of its lawsuit against Defendants, which alone cannot be the basis for a counterclaim. In this instance, Home Design is at least on much firmer legal ground in invoking the First Amendment.

---

[11] Home Design originally alleged that the "Juniper Springs" design infringed upon its HDS-1934 plan. As earlier noted, the Court severed Home Design's HDS-1934 claim from its two other claims. (Doc. 209).

The petition clause of the First Amendment is a valid basis for defending against counterclaims which are "based on the filing of an objectively reasonable lawsuit under a state or federal statute." See, e.g., Porsche Cars N. Am., Inc. v. Lloyd Design Corp., No. 1:99-cv-1560A, 2002 U.S. Dist. LEXIS 9612, at *128 (N.D. Ga. 2002) (citing Cardtoons, L.C. v. Major League Baseball Players Ass'n, 208 F.3d 885, 889-90 (10th Cir. 2000)). Thus, were the infringement claims filed by Home Design the only basis for Park Square's counterclaim, Home Design's First Amendment right to petition would be implicated. Where Home Design's argument falters, however, is in assuming that its infringement claims are the basis for Park Square's counterclaim.

It is not Home Design's lawsuit but instead its alleged registration of generic copyrights and false statements to Beazer Homes which form the basis for Park Square's counterclaim. Critically, neither of these alleged acts involves petitioning the government. Moreover, with regard to Home Design's alleged statements to Beazer Homes, the First Amendment affords no protection to statements made to private persons or entities. See id. ("[P]urely private threats of litigation are not protected because there is no petition addressed to the government.") (quoting Cardtoons, 208 F.3d at 889). For these reasons, Home Design's motion for summary judgment on Defendants' slander of title counterclaim must be denied.

### 2. Unfair Competition

Florida's law of unfair competition requires proof of "deceptive or fraudulent conduct of a competitor and likelihood of customer confusion." Donald Frederick Evans & Assocs. v. Cont'l Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986). Park Square claims that Home

Design has engaged in unfair competition by asserting rights over common, non-copyrightable architectural features, thereby precluding other designers, including Park Square's in-house design staff, from utilizing common features in creating their own architectural plans.  The design and effect of this practice, Park Square contends, is to exclude Home Design's competitors from the architectural design market.

Home Design's principal argument is that it could not have engaged in unfair competition against Park Square because it is not a competitor of Park Square.[12]  This argument points to a critical problem with Park Square's counterclaim.  Although Park Square might reasonably be seen as both a homebuilder and home designer, there is no indication in the record that it competes with Home Design for a common pool of customers.  While Home Design is exclusively an architectural design firm which develops house plans for homebuilders, Park Square designs architectural plans for its own purposes as a homebuilder.  Thus, any customers confused by Home Design's allegedly fraudulent practices could have been neither real nor potential customers of Park Square.  As such, Park Square has no basis for bringing an unfair competition claim against Home Design.  Summary judgment is, therefore, awarded to Home Design on Park Square's counterclaim of unfair competition.

### V. Conclusion

For all of the foregoing reasons, it is **ORDERED** and **ADJUDGED** as follows:

---

[12] The premise of Home Design's argument is that Park Square is a homebuilder, not a architectural design firm.  This premise is not entirely accurate.  While Park Square is primarily a homebuilder, the record is replete with evidence that it also maintains its own architectural design staff.  See, e.g., Doc. 156, Ex. 9, at 8.  In this way, Park Square may be reasonably seen as both a homebuilder and home designer.

1.  Defendants motion for summary judgment (Doc. 156) is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** to the extent that it seeks summary judgment as to: (a) whether Home Design may claim statutory damages and attorney's fees for the infringement of the HDS-2089 design; and (b) whether Defendant Gupta may be held personally or vicariously liable for any of the alleged infringements.

The motion is **DENIED** to the extent that it seeks summary judgment as to: (a) the substantive elements of Home Design's copyright claims; and (b) the amount of Defendants' potential liability for damages.

2.  Home Design's motion for partial summary judgment (Doc. 160) is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** to the extent that it seeks summary judgment as to: (a) whether Home Design has established a prima facie case of copyright ownership in the HDS-2680 design; (b) whether Defendants must be bound to their own experts' calculations of the gross revenue which they derived from their alleged infringements; (c) Defendants' second and fourth affirmative defenses; and (d) Park Square's unfair competition counterclaim.

The motion is **DENIED** to the extent that it seeks summary judgment as to: (a) whether Home Design has established a prima facie case of copyright ownership in the HDS-2089 design; (b) Defendants' first, third, fifth, sixth and tenth affirmative defenses; and (c) Park Square's slander of title counterclaim.

3. Defendants' seventh, eighth, and ninth affirmative defenses are **STRICKEN** to the extent that they have been asserted as affirmative defenses.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this _2ⁿᵈ_ day of ~~April~~ MAY, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party